UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FERRIS VALENTINE,<br><br>Defendant. | 4:19-CR-40067-001-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Ferris Valentine, filed a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 197. Plaintiff, the United States of America, opposes the motion. Docket 200. For the following reasons, Valentine's motion for compassionate release is denied.

## BACKGROUND

On February 18, 2021, Valentine was found guilty of two counts of bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 2 and 18 U.S.C. §§ 2113(a) and 2113(d). Docket 125. Valentine was sentenced to 262 months in custody and five years' supervised release on both counts to run concurrent to each other. Docket 155; Docket 160 at 2-3. A motion for a reduction of sentence was submitted on June 21, 2022. Docket 197. Valentine filed a motion to supplement his motion for a reduction in sentence and submitted the supplement on March 14, 2023. Dockets 208, 210.

Valentine is incarcerated at USP Victorville, a high security U.S. penitentiary. *See Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/; *See USP Victorville*, Fed. Bureau of Prisons,

https://www.bop.gov/locations/institutions/vip/ (last visited Jun. 22, 2023). The total population at USP Victorville is 1,099 persons. *See USP Victorville*. His projected date of release is May 21, 2038. *See Find an Inmate*.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court requesting a reduction in sentence. This provision provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA, requires "extraordinary and compelling reasons" to warrant a sentence reduction, and the court must find that the release of the defendant does not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Valentine's motion for a reduction in sentence asserts that the alleged repugnant food served at the facility, the lack of treatment for his serious medical conditions, the constant lockdowns, and USP Victorville's response to COVID-19 satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 197 at 4-5; Docket 197-2 at 6-8; *See generally* Dockets 207, 210, 213. He requests to be placed in home confinement. Docket 197-2 at 8.

I. **Administrative Exhaustion**

With the enactment of the FSA, Congress has allowed courts to reduce a sentence of imprisonment upon receipt of a motion filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Valentine submitted a request for a sentence reduction to the warden of USP Victorville on March 15, 2022. Docket 197-2 at 6-8. The warden denied the request on March 30, 2022. *Id.* at 4-5. Thereafter, Valentine submitted a motion for a reduction in sentence on June 21, 2022. Docket 197. Having presented the denial letter from the warden and hearing no objection from the United States, the court will presume Valentine has satisfied the exhaustion requirement[1] and will review the matter on the merits.

---

[1] The denial letter informs Valentine of his right to appeal the warden's decision to the Western Regional Director. Docket 197-2 at 5. The letter—signed and dated March 30, 2022, by the warden—states the appeal must be received by

## II.     Extraordinary and Compelling Reasons

Though § 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress has yet to define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Instead, the statute instructs that the court may reduce a term of imprisonment for "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons" for purposes of a sentence reduction through 28 U.S.C. § 994(t).

The Sentencing Commission limited "extraordinary and compelling reasons" to three categories. USSG § 1B1.13, cmt. n.1(A)-(C). The three categories pertain to a defendant's (1) serious physical medical condition or cognitive impairment, or terminal illness that significantly diminishes the ability of the defendant to provide self-care while incarcerated and from which they are not expected to recover, (2) defendant's age, deteriorating health due to the aging process, and amount of time served, and (3) compelling family circumstances. *Id.* A fourth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the director of the

---

the Western Regional Director within 20 calendar days. *Id.* Valentine's records reflect an administrative record pertaining to compassionate release dated April 25, 2022; however, it is unclear whether this record is affiliated with an appeal. Docket 199 at 150.

BOP. USSG § 1B1.13, cmt. n.1(D). The Sentencing Commission affirms that the "foreseeability of extraordinary and compelling reasons" does not exclude an inmate from consideration and the rehabilitation of a defendant alone does not constitute an extraordinary and compelling reason. USSG § 1B1.13, cmt. n.2-3.

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in previous orders. E.g., United States v. Shields, 3:07-CR-30106-01, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); United States v. Muhs, 4:19-CR-40023-02, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG §1B.13, Notes 1(A)-(D) to guide its analysis. See, e.g., Muhs, 2021 WL 534517, at *3.

Valentine contends that his medical conditions hinder his ability to provide self-care, the food served at USP Victorville contains little to no nutritional value, his sister needs his assistance, and USP Victorville's response to the COVID-19 pandemic warrants a reduction in sentence. Docket 197 at 4-5; Docket 197-2 at 6-8; Docket 207; Docket 210; Docket 213. The court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A), the age category, USSG § 1B1.13 Note 1(B), and the catch-all provision, USSG § 1B1.13 Note 1(D).

Assuming the court's discretion to consider a request for reduction in sentence is at least as broad as the outdated policy statement of the

5

Sentencing Commission, Valentine has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.     Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious medical or terminal condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See Medical Conditions*, Ctrs. for Disease Control & Prevention (May. 11, 2023) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC states individuals with any of following conditions are more likely to become very sick with COVID-19: cancer or having a history of cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease, emphysema, chronic bronchitis, interstitial lung disease, idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions,

diabetes (type 1 or type 2), certain disabilities (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or possibly hypertension), HIV infection, immunocompromised condition or weakened immune system due to a medical condition or treatment for a condition (such as people who have cancer and are on chemotherapy, have had a solid organ transplant, and taking certain types of medicines for long periods of time), mental health conditions (mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

The court has reviewed the medical records filed in the present case. Valentine suffers from shoulder pain and cervical disc disorder. Docket 199 at 21, 44. He is prescribed Meloxicam to manage the chronic pain in his shoulder and neck, but only takes the medication when needed. *Id.* at 2, 4-5, 35, 47. He received a right shoulder x-ray in 2010 and the findings were unremarkable. *Id.* at 9, 35. Valentine reported a history of rotator cuff tears and decreased motion. *Id.* at 2, 33, 35. On September 2, 2021, Valentine received an x-ray of his shoulders, and the impressions were relatively normal. *Id.*

Valentine claims he has a "possible terminal illness", and the BOP has

refused to diagnose his condition. Docket 197 at 5. Because the BOP has denied him cancer treatment, he alleges his condition is now likely becoming terminal. Docket 197-2 at 7-8. His medical record does reflect a "cervical disc disorder" that produced chronic neck pain that he correlates to his possible cancer diagnosis. Docket 199 at 1-2, 35, 44. Valentine received radiograph images of his cervical spine on September 3, 2021, and March 10, 2022. *Id.* at 1, 35, 48. No further treatment was suggested; however, he was prescribed Meloxicam to treat his neck pain as needed. *Id.* at 2, 35. As mentioned prior, Valentine reported that he does not take his medication daily to manage his pain. *Id.* at 2.

      Valentine also contends that he suffers from deep depression and anxiety. Docket 207 at 9-10. In June of 2021, he did not report any history of mental health issues, nor do his medical records reflect any treatment or diagnosis for those conditions. Docket 159 ¶ 82; *See* Docket 199. In sum, Valentine's conditions are adequately managed, and he is receiving proper treatment for his conditions while incarcerated.

      Moreover, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations to protect innates from COVID-19. *See BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp. These include safety measures, restrictions on movement, and visitation restrictions, amongst others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See Frequently Asked Questions regarding potential inmate home*

*confinement in response to the COVID-19 pandemic*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/faq.jsp. Since March 26, 2020, 57,061 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. Valentine claims he has tested positive for COVID-19 in the past, however his medical records do not indicate a positive result. Docket 197-2 at 8; *See generally* Docket 199. He has tested negative for COVID-19 various times while incarcerated and has refused a COVID-19 vaccine. Docket 199 at 23, 29-30, 46. This leads the court to conclude Valentine is not overly concerned about the risk of infection.

In light of the above, the court finds Valentine's circumstances do not meet the necessary standard to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.     Age of the Defendant, Note 1(B)

To qualify for a sentence reduction under the age category, USSG § 1B1.13 comment note (B), a defendant must be at least 65 years old, experiencing some sort of "serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less[.]" USSG § 1B1.13 cmnt. n.1(B). Valentine is 56 years old, and contends that his age weighs in favor of a time served sentence, but the court disagrees. Docket 207 at 14; *See Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/(last visited

June 2, 2023). Valentine is not at least 65 years old, nor has he shown that his health has significantly deteriorated due to the aging process, therefore a reduction in sentence is not warranted under the age category, Note 1(B).

    **C.    Family Circumstances, Note 1(C)**

To have a viable claim for a reduction in sentence under the family circumstances category, USSG § 1B1.13 comment note 1(C), the defendant must showcase one of the following: (1) the "death or incapacitation of the caregiver of the defendant's minor child[ren]" or (2) the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Valentine claims his sister was diagnosed with "lupus and other ailments[.]" Docket 197-2 at 6. He alleges her life expectancy has diminished, and a reduction in his sentence will provide them with a better chance of survival. *Id.* at 6; Docket 210 at 4. He asserts that he would serve as her caretaker if released to home confinement. Docket 210 at 4.

Valentine's sister's need for care is not recognized as an extraordinary and compelling reason under the current applicable policy statement, USSG § 1B1.13 comment note 1(C). The family circumstances category specifically references care needed for minor child[re or a spouse. *Id.* Though the court is sympathetic, Valentine does not qualify for a reduction in sentence under the family circumstances category.

    **D.    Catch-all Category, Note 1(D)**

The catch-all category in Note 1(D) does not result in a different outcome.

The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C) USSG § 1B1.13, cmt. n.1(D). Valentine details the lack of nutritional value of the food served at USP Victorville. Docket 197-2 at 6-7. Valentine argues that the United States Sentencing Commission's policy statement was amended, which now recognizes public health emergencies, [expanded] family circumstances, and physical assaults by BOP employees as "extraordinary and compelling" reasons. Docket 210 at 1-2. In addition, Valentine references abuse from USP Victorville staff and assaults from other inmates as circumstances that warrant a reduction in sentence under the extraordinary and compelling provision. Docket 197 at 5; Docket 197-2 at 7; Docket 210 at 2-3; Docket 213. He also submits letters from other inmates who detail their experiences in BOP custody. Dockets 211, 212. The United States Sentencing Commission did publish amendments to USSG § 1B1.13; however, the amendments are not in effect until November 1, 2023. *See United States Sentencing Commission*, ADOPTED AMENDMENTS (EFFECTIVE NOVEMBER 1, 2023), https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023. Until then, the court must apply the current policy statement as the rule of law. Accordingly, the court concludes that Valentine's circumstances—health conditions, facility lockdowns and violence, nutritional complaints, family circumstances, and the COVID-19 pandemic—do not constitute "extraordinary and compelling" reasons under 18 U.S.C. § 3582(c)(1)(A).

11

### III.     Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that a reduction in sentence is not warranted. Valentine was found guilty of two counts of bank robbery. Docket 125. On November 15, 2016, Valentine and his accomplice entered First National Bank disguised as a Caucasian male. Docket 159 ¶ 8. He brandished a dangerous weapon towards a teller and then pointed to the dangerous weapon at a separate bank employee. *Id.* ¶ 9. Valentine demanded that the tellers provide the money from the teller drawers, to which they complied. *Id.* Valentine then went into the bank's vault and began stealing the currency located in the safe. *Id.* ¶ 10. A teller indicated that Valentine seemed to be "in charge of the robbery." *Id.* ¶ 11. The two bank robbers stole $210,114 from First National Bank on November 15, 2016. *Id.*

On November 24, 2017, Valentine returned to the bank and committed another robbery. *Id.* ¶ 12. This time, Valentine was disguised as a mail carrier and carried a firearm. *Id.* ¶ 14. Upon arriving at the bank, he pointed the firearm at a bank employee and directed another employee to the vault. *Id.* Valentine stole the $30,000 that was delivered that day, and took the remaining currency inside the vault. *Id.* After completing the robbery, Valentine fled with approximately $67,866 in U.S. currency. *Id.* ¶ 15.

Valentine's offense level for both counts of bank robbery was 34. *Id.* ¶ 49. He is a career offender with a criminal history category of VI. *Id.* ¶ 71. Valentine's guideline range was 262 to 327 months in custody. *Id.* ¶ 94. Valentine was sentenced to the lower end of his guideline range to 262 months

in custody on both counts to run concurrently to each other. Docket 160 at 2. After careful consideration, the sentence imposed continues to be appropriate for the seriousness of the crime to which Valentine was found guilty.

## CONCLUSION

Valentine has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 197) is denied.

IT IS FURTHER ORDERED that Valentine's motion for leave to supplement his motion for a reduction in sentence (Docket 208) is granted.

Dated June 23, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE